**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
JANE DOE,

       Plaintiff,

    -against-

DAVID K. TOWNES,

       Defendant.

------------------------------------------------------------x

19-CV-8034 (ALC) (OTW)

**CERTIFICATION OF FACTS, CONCLUSIONS OF LAW, AND PROPOSED REMEDY**

**ONA T. WANG, United States Magistrate Judge:**

**To the Honorable Andrew L. Carter, United States District Judge:**

I.     **Introduction and Background**[1]

Plaintiff brings a motion to hold Defendant in civil contempt for violating certain provisions of the District Court's August 28, 2019 Order and Temporary Restraining Order (ECF 4) (the "TRO"). (ECF 17, the "Motion for Civil Contempt" or "Motion").[2] The Motion additionally seeks sanctions and fees and costs. (ECF 17). The District Court referred the Motion to me. (ECF 27).

In the TRO, the District Court restrained and enjoined Defendant from, *inter alia*: "[a]cting on or making further threats of blackmail, extortion, retaliation and physical violence against Plaintiff and her son;" "[u]sing any other means to further intimidate and retaliate, defame, and destroy Plaintiff's reputation;" "[r]evealing Plaintiff's name to the media or any

---

[1] A summary of the underlying facts can be found at ECF 44, the Opinion and Order on the motion to proceed anonymously.
[2] The Motion concerns only alleged conduct between August 28, 2019 and September 11, 2019, the period of time the TRO was in force.

1

other third party, other than Defendant's attorney;" and "[u]tilizing the rolodex and any other materials that Defendant unlawfully obtained from Plaintiff's computer." (ECF 4). The District Court ordered "that **personal service** of a copy of this order and annexed affidavit upon Defendant or Defendant's counsel on or before 10:00 a.m. on August 29, 2019, shall be deemed good and sufficient service thereof." (ECF 4) (emphasis added, emphasis in original altered). The District Court issued the TRO without notice to Defendant, and as required by Rule 65(b)(3), the District Court set a date of September 11, 2019 for Defendant to appear and show cause why a preliminary injunction should not issue with the terms of the TRO. (ECF 4). Defendant did not appear for the September 11, 2019 hearing.[3] (ECF 11). On September 20, 2019, the District Court then issued a preliminary injunction with terms similar to those in the TRO. (ECF 11).

The Motion for Civil Contempt states that in early September 2019, Plaintiff "received several calls from acquaintances notifying her that they had received e-mail communications from Townes. These e[-]mail communications, in sum or in substance, referenced the present suit filed against Defendant Townes by Plaintiff. The e-mails further divulged personal and sensitive details about Plaintiff's life while disparaging Plaintiff and her family history." (ECF 17 at 7). Plaintiff attached four emails to her motion, three dated September 4, 2019 (ECF 41-1, Ex. D; ECF 41-2, Ex. E; ECF 41-3, Ex. F) and one dated September 3, 2019 (Ex 41-4, Ex. G).[4]

---

[3] As will be discussed later, it is possible that Defendant did not appear for the September 11, 2019 hearing because he had not yet been properly served.

[4] These emails, originally attached to the Motion, were heavily redacted and filed without their corresponding attachments. (*See* ECF 17).

2

In the absence of the parties' consent to a magistrate judge's exercising plenary jurisdiction pursuant to 28 U.S.C. § 636(c), a magistrate judge can neither grant nor deny a motion for contempt. The Federal Magistrates Act provides that in civil, non-consent cases, where an act constitutes a civil contempt,

> the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified.

28 U.S.C. § 636(e)(6). "In certifying the facts under Section 636(e), the magistrate judge's role is 'to determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt.'" *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 71 (E.D.N.Y. 2008) (citation omitted). "Under the certification process, the magistrate judge may conduct a hearing." *Hunter TBA, Inc. v. Triple V Sales*, 250 F.R.D. 116, 118 (E.D.N.Y. 2008). If the magistrate judge has certified facts constituting contempt, "the district court must make an independent determination of the facts certified and consider any additional evidence." *Kerr v. John Thomas Fin.*, No. 14-cv-9168 (KBF) (HBP), 2017 WL 485041, at *1 (S.D.N.Y. Feb. 3, 2017) (citing 28 U.S.C. § 636(e)(6))."

"A court may hold a party in contempt when the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's order." *See Sexton v. Lecavalier*, 11 F. Supp. 3d 439, 442 (S.D.N.Y. 2014). A court has the power to hold a party in civil contempt when (1) there is a "clear and unambiguous" court order; (2) there is "clear and convincing" proof of noncompliance; and (3) the party has not attempted to comply in a

3

"reasonably diligent" manner. *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 145 (2d Cir. 2010).

Plaintiff's counsel and Defendant appeared for an evidentiary hearing before this Court on March 4, 2020. I then twice directed Plaintiff to submit supplemental briefing in support of the Motion. On April 7, 2020, I directed Plaintiff to provide to the Court the at-issue emails because the ones filed with the Motion were heavily redacted and missing attachments. (ECF 39). On May 12, 2020, I directed Plaintiff to provide further information on service of the TRO. (ECF 48). Plaintiff's responses, as will be discussed, did not resolve the Court's evidentiary questions. (*See* ECF 41, 50).

As a preliminary matter, before the Court can consider whether Defendant violated the TRO, the Court must consider if Defendant was bound by the TRO. As discussed below, the Court finds that the Defendant was not bound by the TRO, because Plaintiff has not shown that Defendant had actual notice of the TRO.

At the March 4, 2020 evidentiary hearing, Defendant challenged service of the TRO. Tr. 23:12-13 ("I am not sure whether I had a copy of the [TRO]"); 24:15-16 ("I am not sure I received it [on August 29, 2020]."). Once "a defendant raises a challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy." *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002); *see also John Wiley & Sons, Inc. v. Kirtsaeng*, No. 08-cv-7834, 2009 WL 3003242, at *2 (S.D.N.Y. Sept. 15, 2019) ("[T]he party seeking enforcement of an order[,] bears the burden of demonstrating that the persons to be held in contempt are within the scope of the injunction."). The Court will consider the evidence in the light most favorable to the *pro se* defendant. *See Tracy v.*

*Freshwater*, 623 F.3d 90, 92, 101 (2d Cir. 2010) (courts are "ordinarily obligated to afford a special solicitude to *pro se* litigants"). In response, Plaintiff argued *inter alia* that "personal service" should be construed by New York Civil Practice Laws and Rules ("CPLR") 308, and Defendant had constructive knowledge of the TRO. (ECF 50).

## II. Defendant Did Not Receive Personal Service of the TRO

Rule 65, Injunctions and Restraining Orders, states that every injunction and restraining order "binds only . . . [those] who receive *actual notice of it by personal service or otherwise*." Fed. R. Civ. P. Rule 65(d)(2) (emphasis added). "Personal service," although not defined in the FRCP, is generally understood to refer to service on the person. *See, e.g.*, *SEC v. Pence*, 322 F.R.D. 450, 453 (S.D.N.Y. 2017) (discussing "personal service" in interpreting Rule 45's provision that a subpoena "requires delivering a copy to the named person" and citing cases); 3 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1095 (4th ed. 2020). There are many reasons why a Court would order personal service, *i.e.* service on the person, versus another method of service for a TRO. For one, there is the time-sensitive nature of the TRO and a TRO is designed to protect the moving party from immediate irreparable injury. *See* Fed. R. Civ. P. 65(b)(1)(A). Second, because the party bound by the TRO can be subject to penalties for violating the TRO, it is necessary that the party have notice thereof. In *Leadsinger, Inc. v. Cole*, the court interpreted CPLR 6313(b), the CPLR analog to Rule 65, and found that plaintiff was not bound by the terms of the order until he was personally served.[5] *See* No. 05-cv-5605 (HBP), 2006 WL 2266312, at *10-12 (S.D.N.Y. Aug. 4, 2006) (narrowing period for review of

---

[5] A court can "order service otherwise, but it is generally recognized that this power is exercised only when a temporary restraining order is issued in the context of an already pending action." *Leadsinger, Inc*, 2006 WL 2266312, at *11 (quoting *Abrams v. Lurie*, 176 A.D.2d 474, 476 (1st Dep't 1991)).

defendant's conduct for a finding of civil contempt starting from when defendant was personally served not when he was emailed the temporary restraining order). A court can, of course, order service by other means as shown by the "or otherwise" clause of Rule 65(d)(2).

The District Court ordered *personal service* on Defendant and did not prescribe any other means of service that would be allowed. Plaintiff did not personally serve Defendant by the date and time required in Judge Carter's order. The history of service, as relevant to this motion, is as follows:

a) Service of "Order to Show Cause,[6] Motion for TRO and Preliminary Injunction, Memorandum of Law, Declaration, Complaint and Proposed Order to Show Cause" on
   1) **August 29, 2019** (9:58 am): Plaintiff's "place of business," 250 Park Ave., New York, NY 10177, and a copy was left with "Jone Marie" who the affidavit states is a "person of suitable age and discretion" (ECF 6; ECF 50 ¶¶ 6, 7);
   2) **August 29, 2019** (9:47 am): Plaintiff's "usual place of abode," 900 Park Avenue, Apt. 23B, New York, NY 10075, and a copy was left with the doorman[7] (ECF 7; ECF 50 ¶¶ 10-11); and
   3) **August 29, 2019**: copy by First Class mail. (*See* ECF 6, 7; ECF 50 ¶¶ 8, 12).
b) Service of the September 12, 2020 Summons & Complaint (ECF 9):
   1) **September 16, 2019**: Plaintiff's "usual place of abode," 900 Park Avenue, Apt. 23B, New York, NY 10075, and a copy left with the doorman (ECF 13, ECF 50 ¶¶ 25-26); and
   2) **September 17, 2019**: **personally** served on Defendant at 85 Willis Avenue, Ste. F, Mineola, NY 11501 (ECF 14; ECF 50 ¶¶ 29-31 (Defendant was present at 85 Willis Avenue by happenstance)).

---

[6] I will have to presume "Order to Show Cause" mentioned is the District Court's August 28, 2019 Order to Show Cause for Preliminary Injunction and Temporary Restraining Order, but the affidavits of service are not entirely clear.

[7] There is not an affidavit from the process server why he left the document with the doorman. It is reasonable to assume that the doorman would not have let the process server go to Defendant's apartment, but Plaintiff makes no representation that is the case.

None of the methods in (a), which purportedly served the TRO, was "personal service" on Defendant as required by Rule 65 and the District Court's Order.

Plaintiff argues that "personal service" should be defined by CPLR 308, which allows personal service of a *summons* to be made by methods other than only service to the person. (ECF 50). But, that reliance on CPLR 308 is misplaced. *See Kirtsaeng*, 2009 WL 3003242 at *2 ("[R]egardless of any application of New York state law in regards to TROs, Federal Rule 65 'governs such matters as procedures, notice, time periods, and the proper form and service of injunctive orders.'" (quoting *In re Feit & Drexler, Inc.*, 760 F.2d 406, 415 (2d Cir. 1985)). CPLR 308 does not apply here, because it relates to the service of a summons. The CLPR's rules on service of summons would only apply for service of a summons under Rule 4. *See* Fed. R. Civ. P. 4(e)(1) (allowing an individual to be served following state law (*i.e.* CPLR 308 in New York) for serving a summons). Plaintiff does not dispute that Defendant had not yet been served with the summons, and the summons was not being served with the TRO. Plaintiff's attorney does not argue that he tried to serve Defendant personally as required by Rule 65.[8]

Accordingly, Defendant was not served in a manner consistent with Rule 65.[9]

---

[8] Unraised by Plaintiff, but analyzed by this Court, is whether the provisions of alternate service under Rule 5, which outlines methods of service for pleadings and other papers, apply. Because the at-issue order is a TRO and entered before the Complaint was served, I conclude that Rule 65 controls over Rule 5. Rule 5 applies only to appearing parties. *See Reid v. Dan Yant, Inc.*, No. 15-cv-2358 (MKB) (SJB), 2018 WL 8014197, at *2 (E.D.N.Y. Oct. 25, 2018) (finding that an amended complaint was not properly served); Wright & Miller § 1144 ("[A] party who has not appeared is not entitled to service under Rule 5."); 1 Moore's Federal Practice § 5.03[1] (3d ed. 2018) ("The service provisions in Rule 5 apply only after a party has made an appearance in the proceeding."); § 5.03[4] ("Rule 5 does not apply to . . . claims [against non-appearing parties] because the Rule 5 service provisions assume that the court has personal jurisdiction over the party and that the party is already aware of the proceedings and is keeping abreast of new developments."). Even if Rule 5 were to apply, service may not have complied with it, because Plaintiff has not offered any facts to suggest that Jone Marie is "a clerk or other person in charge" as required by Rule 5(b)(2)(B)(i) or that 900 Park Ave, Apt. 23B is Defendant's usual place of abode as required by Rule 5(b)(2)(B)(ii).

[9] This is not the only time that Plaintiff's counsel has failed to properly serve documents. On May 12, 2020, this Court ordered the service of ECF 44, ECF 45, and ECF 48 by "email and mail" and Defendant to "file proof of service

### III.     <u>Plaintiff Has Not Shown When Defendant Received Actual Notice</u>

Rule 65 is clear that only persons who have "actual notice" can be bound by a TRO. *See* Fed. R. Civ. P. Rule 65(d)(2) ("The order binds only the following who receive actual notice of it by personal service or otherwise."). Actual notice "is 'notice given directly to, or received personally by, a party.'" *Kirtsaeng*, 2009 WL 3003242, at *2 (quoting *Black's Law Dictionary* 1164 (9th ed. 2009)). Even if Defendant was not personally served, the TRO could have still bound him if he had "actual notice" by another means. *See Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 129 (2d Cir. 1979) ("[Rule 65(d)] codifies the long settled principle that personal service of an injunction is not required so long as those whom the plaintiff seeks to hold in contempt had actual notice of the decree.").

There is some evidence that Defendant had actual notice of the TRO by September 3, 2019. The emails attached to the Motion purportedly included attachments, which were documents drafted by Defendant referencing a lawsuit by Plaintiff against Defendant. (ECF 41). The earliest of these emails is dated September 3, 2019. (ECF 41-4; *see* ECF 41-5 for document that is purportedly titled "[redacted] lawsuit memo").[10] The process server had purportedly attached a copy of the "Complaint and Proposed Order to Show Cause" along with the "Order to Show Cause." (ECF 6 and 7). Thus, one could infer that Defendant had actual notice of the TRO by virtue of Defendant knowing that there was a lawsuit.

---

within seven days of [ECF 44/45/48]." (ECF 44, 45, 48). The Court ordered service by email because there were previous mailings to the 250 Park Avenue address had been returned to the sender. On May 18, 2020, Plaintiff's attorney filed an affirmation that service was made by First Class Mail to Defendant at 250 Park Avenue; there was no mention that there was service by email. (ECF 49). Further, the affidavit of service is unclear what was mailed, specifying only "Opinion & Order and Order."

[10] Defendants' emails dated September 4, 2019 (ECF 41-1, 41-2) also attached the same document, "[redacted] lawsuit memo," and another document titled "Addenda, [redacted] and Townes."

However, it would also be possible to infer that the Defendant knew about the lawsuit from a different source, or was still referencing a future complaint because the Complaint also alleges that, as early as late-July **2018**, Defendant threatened Plaintiff if she were to file a lawsuit against him and started emailing third parties about a potential lawsuit. (*See* ECF 1 ¶¶ 200-214; *see also* ECF 30 (attaching July and August 2018 emails referencing potential litigation)). Another reasonable inference given the parties' overlapping social circles is that Defendant learned of the lawsuit from a third-party and not the process server.

Further complicating the fact-finding is that Plaintiff has not provided the Court with either the native version or copies of the emails with their corresponding attachments, *i.e.* unbroken email families. On April 7, 2020, I even ordered Plaintiff to "file on the docket the emails, with corresponding attachments to each email." (ECF 39) (bolded in original). Plaintiff's filing in response to the April 7 order did not file the emails with corresponding attachments. Her counsel only included as a single exhibit *one* copy of the attachments each without any representation if all the attachments to the various parent emails were identical, *i.e.* did not differ among the parent emails.[11] Plaintiff has not provided sufficient information to the Court to determine when Defendant had actual notice. And, even assuming, *arguendo*, that there was actual notice, the Court cannot determine when the first instance of non-compliance with the TRO occurred.

Plaintiff's Supplemental Brief and Affirmation Regarding Service proffers no facts showing Defendant had actual notice of the TRO, and only argues that "[l]ogically speaking,"

---

[11] Had this been in the context of civil discovery, this could have warranted a defendant filing a motion to compel or spoliation motion.

Defendant's knowledge of the lawsuit is "proof" that he had knowledge of the TRO. (ECF 50 ¶ 18). Although this may be enough for constructive notice (which Plaintiff argues), it is not enough for actual notice as is required by Rule 65. *See In re Francis*, No. 12-cv-6104, 2013 WL 773458, at *4 (W.D. Ark. Feb. 28, 2013) ("The difference [between actual and constructive notice] is this: a party may truly *have* actual notice, or it may be *deemed* to have actual notice. . . . True actual notice does not entail any inquiry, because an inquiry is unnecessary when one already knows something."). Given the ambiguities in the record and the failure of personal service, I decline to find that Defendant had actual notice of the TRO at anytime before the expiration of the TRO on September 11, 2019.

Because there was improper service of the TRO and failure to prove actual notice, the Court is unable to certify whether (and if so, when) Defendant was bound by the TRO.[12]

---

[12] If the District Court is inclined find there was actual notice, I would have certified the following: there was a clear and unambiguous order in the form of the TRO. But, I would be unable to certify when the first instance of clear and convincing proof of noncompliance occurred.
Further, there is insufficient information for damages. Civil contempt sanctions serve two purposes: (1) to coerce the offending party into compliance or (2) to compensate the wronged party. *See Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs. Inc.*, 369 F.3d 645, 657 (2d Cir. 2004); *Al Hirschfeld Found. v. Margo Feiden Galleries Ltd*, 438 F. Supp. 3d 203, 207-08 (S.D.N.Y. 2020). Civil contempt sanctions, unlike criminal contempt sanctions, are not intended to be punitive. *See Paramedics*, 369 F.3d at 657. The district court has more discretion with a coercive sanction than compensatory sanctions, which "should correspond at least to some degree with the amount of damages." *Id.* at 658; *see also Hirschfeld*, 438 F. Supp. 3d at 203 (finding that damages must be proven). Here, Plaintiff has not stated a purpose for her requested sanctions. If they are compensatory sanctions, she has offered no proof of the amount of the damages nor any fees and costs associated with the motion. If they are coercive sanctions, they must be denied as moot because the TRO has expired, and "where a civil contempt proceeding is coercive in nature and seeks to enforce an interlocutory order, it abates when the proceedings out of which it arises are terminated." *Charter Practices, Int'l, LLC v. Robb*, No. 12-cv-1768 (RNC), 2013 WL 12178172, at *3 (D. Conn. May 22, 2013) (internal quotations omitted) (denying as moot a motion for civil contempt seeking coercive sanctions in conjunction with an expired TRO).

### IV.     Conclusion

As set forth above, Plaintiff has not made the requisite showing and I am unable to certify the facts as constituting civil contempt. Accordingly, I recommend that the Motion for Civil Contempt (ECF 17) be denied.

### V.     Objections

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (including weekends and holidays) from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be addressed to the Honorable Andrew L. Carter, United States District Judge. **Any requests for an extension of time for filing objections must also be directed to Judge Carter.** If Defendant wishes to review, but does not have access to, cases cited herein that are reported on Westlaw, he should request copies from Plaintiff. *See Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009).

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

**The Plaintiff is directed to email <u>and</u> mail a copy of this Certification of Facts, Conclusions of Law, and Proposed Remedy to the *pro se* Defendant and file proof of service on the docket within seven (7) days of this Certification.**

Respectfully submitted,

_s/ Ona T. Wang_

Dated: July 21, 2020 **Ona T. Wang**
New York, New York United States Magistrate Judge